# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# ERIE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.    16-224 Erie |
| ) | |
| v. ) | C O M P L A I N T |
| ) | |
| SAINT VINCENT HEALTH CENTER, ) | JURY TRIAL DEMAND |
| ) | |
| Defendant. ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion, and to provide appropriate relief to Alekandr Gevorkyan ("Gevorkyan"), Aza Galustyan ("Galustyan"), Brian Nash ("Nash"), Joshua Dolecki ("Dolecki"), Lisa Waller ("Waller") and Beth Theobald ("Theobald"), who were adversely affected by such practices. As alleged with greater particularity in paragraphs 12 through 81, below, the U.S. Equal Employment Opportunity Commission (EEOC) alleges that Defendant Saint Vincent Health Center ("Defendant") failed to accommodate the religious beliefs of Gevorkyan, Galustyan, Nash, Dolecki, Waller, and Theobald (collectively, "EEOC Claimants"). The Commission further alleges that Defendant discharged Gevorkyan, Galustyan, Nash, Dolecki, Waller, and Theobald because of religion.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Pennsylvania, Erie Division.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, which is part of the Pittsburgh-based Allegheny Health Network, has been continuously doing business in the Commonwealth of Pennsylvania and the City of Erie, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Gevorkyan, Galustyan and Nash each filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On August 4, 2015, the Commission issued to Defendant Letters of Determination finding reasonable cause to believe that Defendant violated Title VII with respect to Gevorkyan, Galustyan, Nash and the other EEOC claimants listed above, and inviting Defendant to join with

the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission subsequently engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On October 14, 2015, the Commission issued to Defendant Notices of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

12. Since at least October 2013, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

13. As described more fully below, Defendant subjected Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald to discrimination because of religion by failing to accommodate their sincerely held religious beliefs and practices that prevented them from receiving the influenza vaccine.

14. As described more fully below, Defendant also subjected Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald to discharge because of religion, in that their discharges were caused by Defendant's requirement that they receive influenza vaccinations as a condition of their continuing employment and its refusal to grant their requests for religious accommodation exempting them from that requirement.

15. As described more fully below, Defendant also subjected Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald to discharge because of religion, in that because of religion

3

they were treated less favorably than similarly situated employees who received exemption from the influenza vaccination requirement for reasons of medical contraindication.

Defendant's Mandatory Seasonal Influenza Vaccination Policy

16. Beginning on or about October 2013, Defendant has maintained a mandatory seasonal influenza vaccination policy ("mandatory vaccination policy") that requires all employees to receive an influenza vaccination annually as a term and condition of their employment.

17. Under Defendant's mandatory vaccination policy, an employee may request an exemption to the requirement that he or she receive the influenza vaccine for either medical contraindication or religious accommodation reasons.

18. As part of Defendant's mandatory vaccination policy, it made available a form for requesting religious exemptions from the influenza vaccine requirement called "Mandatory Influenza Vaccination Exemption Request Form" ("the Form"). In order for employees requesting religious exemption from the vaccine requirement to qualify for such an exemption, the Form requires them to obtain a certification by a clergy member or other third-party that the employee requesting exemption "practices a religion where influenza vaccination is contraindicated according to doctrine or accepted religious practices."

19. Defendant's mandatory vaccination policy requires that any individual who receives an exemption from the vaccination requirement for medical or religious reasons must wear a surgical face mask whenever he or she has direct patient contact during flu season.

20. Defendant's mandatory vaccination policy requires that any employee who has not been vaccinated for influenza and has not received a Defendant-approved exemption from the vaccination requirement will be discharged for failure to receive the vaccination.

4

Charging Party Aleksandr Gevorkyan

21. Charging Party Aleksandr Gevorkyan was employed by Defendant as a sonographer assigned to Allied Urology Associates, an outpatient urology practice acquired by Defendant in or around mid-2013. He had held that position with Allied Urology Associates since 1992.

22. At all relevant times Gevorkyan has been a member of the Russian Orthodox faith. He believes that his body is a temple of the Holy Spirit, and that he is to honor God with his body. As a result, Gevorkyan sincerely believes that his religion requires him to keep his body pure from everything that contaminates the body and spirit, and he further believes that such contaminants include vaccines. Gevorkyan sincerely believes that he is required by his religion to refrain from receiving vaccines.

23. On or about December 15, 2013, Gevorkyan submitted to Defendant a Religious Exemption Request Form that Defendant made available to its employees in which he requested exemption from the mandatory flu vaccine policy on religious grounds, stating, "some Orthodox feel very strongly about flu injections."

24. On or about December 17, 2013, Defendant denied Gevorkyan's request for religious exemption via letter from its human resources manager, Kevin Kuroda.

25. In or about late December 2013 or early January 2014, Gevorkyan submitted a revised exemption request form, citing to 1 Corinthians and 2 Corinthians in the Christian Bible in support of his religious objection to receiving the flu vaccine.

26. On or about January 14, 2014, Kuroda emailed Gevorkyan and informed him that Defendant's decision not to grant a religious exemption would stand and that if Gevorkyan failed to comply with the mandatory vaccination policy by January 15, 2014, he would be discharged.

27. Defendant discharged Gevorkyan effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

28. On or about February 5, 2014, Father Seraphim Wing, the priest at Gevorkyan's church, contacted Kuroda via telephone and informed him he would be sending him a letter detailing Gevorkyan's objection to receiving the flu vaccine.

29. On February 6, 2014, Father Wing emailed Kuroda a copy of the letter, which explained Gevorkyan's objection to the flu vaccine, and stated, in relevant part, "Mr. Gevorkyan's objection to the flu vaccine is not simply a 'mere personal preference' or a 'secular philosophical opposition to vaccination.' [His] motivation is to strive to live by the Church's scriptural teaching in [his] everyday li[fe]. In this case, it manifests itself in abstaining from the flu vaccine, because of the sincerely held religious belief that the flu vaccine injects impurities or poisons into the body, in scriptural terms, into the 'temple' of an Orthodox Christian. Should the committee reviewing requests for religious accommodations desire to discuss this issue further, I may be reached at the Rectory at the number provided above."

30. On or about February 15, 2014, Father Wing again contacted Kuroda via telephone, and asked him whether he had received his February 5, 2014 letter, and whether Defendant had changed its mind about accommodating Gevorkyan. Kuroda told him that Gevorkyan's request for accommodation was still denied, and that the termination stood.

31. Defendant subsequently communicated to the Commission that the reason for its decision not to grant Gevorkyan's request for religious exemption was as follows: "Did not provide proof of religious doctrine."

Charging Party Ava Galustyan

32. Charging Party Ava Galustyan, who is Charging Party Gevorkyan's mother, was employed by Defendant as a medical records clerk assigned to Allied Urology Associates, an outpatient urology practice acquired by Defendant in or around mid-2013. She had held that position with Allied Urology Associates since 1994.

33. At all relevant times Galustyan has been a member of the Russian Orthodox faith. She believes that her body is a temple of the Holy Spirit, and that she is to honor God with her body. As a result, Galustyan sincerely believes that her religion requires her to keep her body pure from everything that contaminates the body and spirit, and she further believes that such contaminants include vaccines. Galustyan sincerely believes that she is required by her religion to refrain from receiving vaccines.

34. On or about December 15, 2013, Galustyan submitted to Defendant a Religious Exemption Request Form that Defendant made available to its employees in which she requested exemption from the mandatory flu vaccine policy, stating, "some Orthodox feel very strongly about flu injections."

35. On or about December 17, 2013, Defendant denied Galustyan's request for religious accommodation via letter from Kevin Kuroda.

36. In or about late December 2013 or early January 2014, Galustyan submitted a revised exemption request form, citing to 1 Corinthians and 2 Corinthians in the Christian Bible in support of her objection to receiving the flu vaccine.

37. On or about January 14, 2014, Kevin Kuroda emailed Galustyan and informed her that Defendant's decision not to grant a religious exemption would stand, and that if Gevorkyan

7

failed to comply with the mandatory vaccination policy by January 15, 2014, she would be discharged.

38. Defendant discharged Gevorkyan effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

39. On or about February 5, 2014, Father Seraphim Wing, the priest at Galustyan's church, contacted Kuroda via telephone and informed him he would be sending him a letter detailing Galustyan's objection to receiving the flu vaccine.

40. On February 6, 2014, Father Wing emailed Kuroda a copy of the letter, which explained Galustyan's objection to the flu vaccine, and stated, in relevant part, "Ms. Galustyan's...objection to the flu vaccine is not simply a 'mere personal preference' or a 'secular philosophical opposition to vaccination.' [Her] motivation is to strive to live by the Church's scriptural teaching in [her] everyday li[fe]. In this case, it manifests itself in abstaining from the flu vaccine, because of the sincerely held religious belief that the flu vaccine injects impurities or poisons into the body, in scriptural terms, into the 'temple' of an Orthodox Christian. Should the committee reviewing requests for religious accommodations desire to discuss this issue further, I may be reached at the Rectory at the number provided above."

41. On or about February 15, 2014, Father Wing again contacted Kuroda via telephone, and asked him whether he had received his February 5, 2014 letter, and whether Defendant had changed its mind about accommodating Galustyan. Kuroda told him that Galustyan's request for accommodation was still denied, and that the termination stood.

42. Defendant subsequently communicated to the Commission that the reason for its decision not to grant Galustyan's request for religious exemption was as follows: "Did not provide proof of religious doctrine."

8

Charging Party Brian Nash

43. Charging Party Brian Nash was employed by Defendant as a registered nurse for over a decade.

44. At all relevant times Nash has been a member of the Baptist faith and attends an Independent Fundamental Baptist church. Based on his religion, Nash sincerely believes that he was created in the image of God, that he has been instructed by God not to defile his body, and that receiving vaccinations are a form of defiling the body and thus he should not receive vaccinations or immunizations. Nash sincerely believes that receiving the flu vaccine would improperly impact his immune system, which he believes to be tantamount to failing to respect the sacredness of his own blood as created by God. Nash sincerely believes that he is required by his religion to refrain from receiving vaccines.

45. On or about December 14, 2013, Nash submitted to Defendant a Religious Exemption Request Form that Defendant made available to its employees in which he requested exemption from the mandatory flu vaccine policy. In his exemption request, Nash cited passages from the books of Leviticus, I Corinthians, and Luke of the Christian Bible in support of his sincerely held belief that he must not receive the flu vaccine.

46. On or about January 15, 2014, Defendant, through Kevin Kuroda, denied Nash's request for exemption and informed Nash he was suspended without pay, pending his receipt of the vaccine.

47. Nash requested a meeting with Defendant to clarify and further explain the conflict between his religious belief and receiving the flu vaccine.

48. Defendant rejected Nash's attempt to meet to further explain his belief, stating its opinion that there was no conflict between Nash's religious beliefs and receiving the vaccine.

49. Defendant discharged Nash effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

50. Defendant subsequently communicated to the Commission that its reason for denying Nash's request for exemption was as follows: "Did not provide proof of religious doctrine."

Claimant Joshua Dolecki

51. Claimant Joshua Dolecki was employed by Defendant as a registered nurse.

52. At all relevant times, Dolecki has been an ordained Interfaith minister and a practitioner of Christian Mysticism. He lives according to the teachings of "A Course in Miracles," which instructs that when one obeys the laws of God's love, he will prevent disease, stay healthy, and assist others in healing. Based on these aforementioned teachings, Dolecki sincerely believes that he is not permitted to receive vaccines or immunizations, because God has already given him everything he needs – mind, body and spirit – and that accepting a vaccine would prevent him from experiencing a close a relationship with God. Dolecki sincerely believes that he is required by his religion to refrain from receiving vaccines.

53. In or about mid-December, 2013, Dolecki submitted to Defendant a Religious Exemption Request Form that Defendant made available to its employees ("exemption request") stating that he practiced Christian Mysticism and subscribed to the beliefs set forth in "A Course in Miracles," which teach that "[o]neness with God is your ultimate protection," and that "one need only obey the law of God's love to prevent disease, stay healthy, and help others heal."

54. Defendant denied Dolecki's request for accommodation, and in or around January 2014, placed him on probation for failing to comply with the mandatory flu vaccination program.

55. In or around January 2014, Dolecki met with Kevin Kuroda and sought to explain and clarify for Defendant his beliefs that caused him to object to the flu vaccine. At that meeting, Kuroda told Dolecki that he had researched "A Course in Miracles" for approximately an hour prior to the meeting, but stated that he did not see mention of any spiritual or religious practice in the document that expressly contradicted vaccinations. Kuroda told Dolecki he was looking for something akin to the tenet of the Jehovah Witness faith that prohibits blood transfusions.

56. In response, Dolecki pointed Kuroda to several passages in "A Course in Miracles," including Lesson 75, which states, in relevant part, "You really think a small round pellet or some fluid pushed into your veins through a sharpened needle will ward of disease and death. You really think you alone unless another body is with you. It is insanity to think these things. You call them laws, and put them under different names in a long catalogue of rituals that have no use and serve no purpose. You think you must obey the 'laws' of medicine, of economics and health. Protect the body, and you will be saved. These are not laws, but madness." Dolecki further explained to Kuroda that he believes that "A Course in Miracles" is ultimately a fool-proof Jesus-inspired curriculum based on forgiveness and brings eternal health, love and peace into one's awareness. He also told Kuroda that being vaccinated would violate his spiritual freedom and compromise his awareness of God.

57. At the aforementioned meeting, Kuroda told Dolecki that no one else had been granted a religious exemption and, as such, Kuroda did not think it likely that St. Vincent would grant Dolecki's requested exemption. Kuroda also told Dolecki that although he supported his spiritual practices, they should not be carried out at work. Dolecki informed Kuroda that part of his practice is to not push his beliefs on anyone else, and that his path is not everyone's path. He

11

also reminded Kuroda that he had been teaching lessons from "A Course in Miracles" at Defendant for several years as part of the spiritual learning curriculum for new graduate nurses for continuing nursing credit.

58. Approximately one or two days after his January 2014 meeting with Kuroda, Dolecki submitted a letter addressed "To whom it may concern" to Kuroda, describing in further detail his objection to receiving the flu vaccine, and citing to additional passages in "A Course in Miracles." Dolecki explained that the mandatory flu vaccine requirement presented him with "a dilemma since my relationship with God is the single most important thing in my life and my job demands I receive [the vaccine] to work there." He further expressed that "it would feel meaningless and contradictory to the practice and growth of my spiritual beliefs…to acquire the flu shot."

59. Approximately two days after sending the "To whom it may concern" letter, Dolecki called Kuroda's office and spoke with Kuroda's assistant, Dennis, who told him that Kuroda had reviewed the letter but was still denying Dolecki's request for exemption from the flu vaccine.

60. On February 6, 2014, Kuroda emailed Dolecki, informing him that his request for religious accommodation had been reviewed but that the original decision to deny his request had been confirmed.

61. Subsequently, Dolecki sent a final e-mail transmission to Kuroda and asked why the "spiritual/religious practice and representation of [his] Interfaith path through following the principles of ACIM ["A Course in Miracles"] and teachings of Jesus have been viewed as unworthy of being granted a religious exemption."

12

62. Kuroda did not respond to Dolecki's final e-mail transmission. Defendant discharged Dolecki effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

63. Defendant subsequently communicated to the Commission that its reason for denying Dolecki's request for religious exemption was as follows: "Did not provide proof of religious doctrine."

Claimant Lisa Waller

64. Claimant Lisa Waller was employed as a registered nurse at Defendant's Westfield Memorial Hospital Wound Clinic in Westfield, New York for approximately twenty-five (25) years.

65. At all relevant times, Waller has been a member of the Methodist faith. She sincerely believes that God, through the Bible, directs her not to introduce toxins into her body, and she believes that vaccines and immunizations are such toxins that she has been instructed by God not to put into her body. Instead of vaccinations and traditional pharmaceuticals, Waller believes in using holistic medicine and nutrition as a path to healing. Waller sincerely believes that she is required by her religion to refrain from receiving vaccines.

66. On or about January 30, 2014, Waller submitted to Kevin Kuroda (via facsimile transmission and e-mail transmission) a request for religious exemption from the flu vaccine. She further stated that she was preparing an additional document setting forth, in greater detail, her objection to immunizations that she would share with him as well.

67. On or about January 31, 2014, Waller contacted Kuroda by telephone and asked if she could submit a more detailed statement about her religious objections to the flu vaccine. Kuroda told her that submitting such a document would not be necessary. Later that same day,

13

he emailed Waller and told her that her request for exemption from the flu vaccine had been reviewed and denied, and that she would be discharged if she did not comply with the mandatory flu vaccine policy by close of business that same day.

68. Waller responded via email, and expressed her disagreement with the decision and that it had been made with incomplete information about her religious beliefs, and she requested that Kuroda reconsider the decision.

69. Defendant did not reconsider its decision or request further information about Waller's religious beliefs. Defendant discharged Waller effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

70. Defendant subsequently communicated to the Commission that its reason for denying Waller's request for exemption was as follows: "Did not provide proof of religious doctrine."

### Claimant Beth Theobald

71. Claimant Beth Theobald was employed by Defendant as a registered nurse, and had worked at St. Vincent Hospital in that capacity since 2012.

72. At all relevant times Theobald has been a member of the non-denominational Christian faith and is not affiliated with a particular church. Theobald sincerely believes that God wants her to live according to healthy lifestyle practices and alternative medicine techniques in lieu of vaccine use. Theobald sincerely believes that God has provided her with all of the tools and resources in nature to provide her immune system with the capabilities it needs to heal and strengthen itself, and she feels morally compelled to live by those methods and practices. Theobald sincerely believes that she is required by her religion to refrain from receiving vaccines.

73. On or about October 8, 2013, Theobald submitted to Defendant a note from her primary care physician requesting exemption from the flu vaccine due to her "personal religious and moral beliefs."

74. On or about October 21, 2013, Kuroda informed Theobald that Defendant was unable to respond to her request for exemption as it was incomplete, and asked her to provide additional information.

75. On or about November 1, 2013, she submitted a lengthy letter to Defendant explaining her beliefs and objections to the vaccine. Theobald stated that she is a Christian and believes she must treat her body with respect, as it is a gift from God. In that letter, Theobald cited to passages in 1 Corinthians and 2 Corinthians in the Christian Bible. She further explained that she follows the tenets of the Weston A. Price Foundations recommendations on nutrition, which compel her to reject immunizations.

76. Defendant denied Theobald's request for religious exemption notwithstanding the explanation she provided on or about November 1, 2013.

77. In early January 2014, Theobald drafted another document entitled "The Evolution of My Doctrine: A Continual Process" and provided it to Kuroda. The document further explained the basis for her religious belief against receiving vaccines.

78. Subsequently, Defendant continued to deny Theobald's request for exemption. Defendant discharged Theobald effective January 31, 2014, for failing to receive the influenza vaccination as required by Defendant's mandatory vaccination policy.

79. Defendant subsequently communicated to the Commission that its reason for denying Theobald's request for exemption was as follows: "Did not provide proof of religious doctrine."

### EEOC Claimants And Persons Seeking Religious Exemption As A Class

80. In the 2013-2014 flu vaccination period, the period in which Defendant denied the religious exemption requests of Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald, Defendant granted 14 employee requests for exemption from its mandatory influenza vaccination requirement based on medical contraindication. Employees who received such medical exemptions held job titles that included registered nurse, licensed practical nurse, echocardiogram technologist, and occupational therapist.

81. In the 2013-2014 flu vaccination period, the period in which Defendant denied the religious exemption requests of Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald, Defendant received 11 employee requests for exemption from its mandatory influenza vaccination requirement that identified religious grounds as the basis of requested exemption. Defendant denied all 11 religious exemption requests.

82. In the 2015-2016 flu vaccination period, Defendant granted religious exemptions from the flu vaccination requirement to employees with patient contact.

83. The effect of the practice(s) complained of in paragraphs 12 through 81, above, has been to deprive Gevorkyan, Galustyan, Nash, Dolecki, Waller, and Theobald of equal employment opportunities and otherwise adversely affect their status as employees because of their respective religions.

84. The unlawful employment practices complained of in paragraphs 12 through 81, above, were intentional.

85. The unlawful employment practices complained of in paragraphs 12 through 81, above, were done with malice or with reckless indifference to the federally protected rights of Gevorkyan, Galustyan, Nash, Dolecki, Waller, and Theobald.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with it, from discriminating against applicants and current or future employees based on their religious beliefs, practices or observances and/or their refusal to violate their religious beliefs, practices or observances.

B.  Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with it, from discriminating against applicants and current or future employees by refusing to grant them reasonable accommodation for religion in the form of exemption from Defendant's mandatory flu vaccination requirement.

C.  Order Defendant to institute and carry out training, policies, practices, and programs which provide equal employment opportunities in relation to religion of employees and job applicants and that eradicate the effects of its past and present unlawful employment practices.

D.  Order Defendant to make whole Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

E.  Order Defendant to make whole Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald by providing compensation for past and future pecuniary losses resulting from the

17

unlawful employment practices described in paragraphs 12 through 81, above, such as debt-related expenses, job search expenses, medical expenses and other expenses incurred as a result of Defendant's conduct, in amounts to be determined at trial.

F. Order Defendant to make whole Gevorkyan, Galustyan, Nash, Dolecki, Waller and Theobald by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 12 through 81, above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G. Order Defendant to pay Gevorkyan, Galustyan, Nash, Dolecki, Waller, and Theobald punitive damages for its malicious and reckless conduct described in paragraphs 12 through 81, above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
GENERAL COUNSEL

JAMES L. LEE
DEPUTY GENERAL COUNSEL

GWENDOLYN YOUNG REAMS
ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

*Debra M. Lawrence /LHL*

DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – Philadelphia District Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
(410) 209-2734
(410) 962-4270 (facsimile)

*Ronald L. Phillips /LHL*

RONALD L. PHILLIPS
SUPERVISORY TRIAL ATTORNEY
EEOC – Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
(410) 209-2737
(410) 962-4270 (facsimile)
E-mail address: ronald.phillips@eeoc.gov

*Lisa H. Hernandez*

LISA H. HERNANDEZ
SENIOR TRIAL ATTORNEY
PA I.D. 87634
EEOC – Pittsburgh Area Office
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Telephone number: (412) 395-5852
Facsimile number: (412) 395-5749
E-mail address: lisa.hernandez@eeoc.gov